IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GRATTON CURTIS ODELL,

    **Plaintiff,**

    v.                                                                                   CASE NO. 25-3008-JWL

FORD COUNTY SHERIFF'S DEPARTMENT, et al.,

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff Gratton Curtis Odell, who is in custody at the Ford County Detention Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis.

**I. Nature of the Matter before the Court**

At the time of the events that led to this complaint, Plaintiff and his girlfriend were having problems. (Doc. 1, p. 2.) Plaintiff alleges that on the night of January 27, 2023, his girlfriend reported to local law enforcement that he had stolen their pickup truck and, when police did not respond, the next morning she reported him for domestic violence. *Id.* at 2, 4-5. Officer Morris Jones of the Ford County Sheriff's Department (FCSD) responded to the call and came to Plaintiff's home before Plaintiff left for work on the morning of January 28, 2023. *Id.* at 4. While Plaintiff and Officer Jones were talking, three additional FCSD officers arrived in response to the call: Bryan Stammer, Matthew Bolmer, and Stephen M. Ligon. *Id.* The three newly arrived officers "took control of the conversation" and "were all asking [questions] and talking at the same time." *Id.* at 4-5.

Plaintiff attempted to explain the circumstances that led to his girlfriend contacting police

that morning and the night before, but the officers "tried to tell [him] what happened and what [he] did and that [he] had hurt" his girlfriend. *Id.* at 6. Plaintiff told the officers that he may have shoved his girlfriend and that he had broken a phone he had given her as a gift. *Id.* At that point, officers told Plaintiff he was under arrest. *Id.* Plaintiff told the officers to go talk to his girlfriend again. *Id.*

Plaintiff alleges that the officers then began to manhandle him and one of them tackled him, after which they tazed Plaintiff. *Id.* Plaintiff believes Officers Stammer and Bolmer were most involved, but he alleges that Officer Ligon's wife later apologized for her husband's involvement as well. *Id.* Plaintiff was tazed 23 times in his right leg and right arm and was taken to jail. *Id.* at 6-7. He did not receive medical attention, despite feeling chest pain and shortness of breath while being transported, and he showed his injuries to another inmate once at the jail. *Id.* at 7. After Plaintiff posted bond and was released, he went to St. Catherine's Hospital in Dodge City, Kansas, where staff counted 48 marks on his body from the tazer. *Id.* Plaintiff also was referred to speak to a counselor in Dodge City who prescribed medication "for the incident" and for post-traumatic stress disorder. *Id.*

Plaintiff names as defendants the FCSD, Officer Stammer, Officer Bolmer, and Officer Ligon. *Id.* at 1-3. As the sole Count in this matter, Plaintiff alleges that tazing him 23 times was an unconstitutional use of excessive force. *Id.* at 4. For relief, Plaintiff seeks reversal of his subsequent criminal convictions, the award of compensatory damages, and reimbursement of his hospital bill.

## II. Statutory Screening

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that

seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163

(10th Cir. 2007). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. Discussion**

    **A. Excessive Force**

"Excessive force claims are cognizable under the Fourth, Fifth, Eighth, and Fourteenth Amendment, depending on where in the criminal justice system the plaintiff is at the time of the challenged use of force." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). "When an 'excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both*

that a seizure occurred and that the seizure was unreasonable." *Id.* (quoting *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (emphasis in original) (quotation marks omitted)). In assessing reasonableness, a court "looks at the facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Id.* (quoting *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020)). The inquiry is an objective one, and one that considers the totality of the circumstances. *Id.* (citation omitted). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). "The right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (unpublished) (quoting *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (internal quotation marks omitted)). "Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable." *Arnold v. City of Olathe, Kansas*, Case No. 2:18-cv-02703-HLT, 2021 WL 3129408, at *8 (D. Kan. July 23, 2021) (citation omitted).

The Supreme Court in *Graham* outlined three factors that guide the reasonableness analysis: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Vette*, 989 F.3d at 1169 (quoting *Graham*, 490 U.S. at 396). In evaluating the third factor, a court considers "whether the plaintiff was fleeing or actively resisting at the 'precise moment' the officer employed the challenged use of force." *Id.* (citation omitted). The Tenth Circuit has also held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) (citations omitted).

5

**B. Heck Bar**

Online district court records show that Plaintiff pleaded no contest to: (1) aggravated domestic battery; (2) aggravated escape from custody; (3) interference with law enforcement by obstructing/resisting/opposing felony warrant service or execution; and (4) battery on a law enforcement officer – no bodily harm. *See State v. Odell*, Case No. FO-2023-CR-000063 (District Court of Ford County, Kansas). Plaintiff was sentenced to a controlling sentence of 46 months in prison. *Id*. If Plaintiff's claim in this case would necessarily imply the invalidity of one or more of his convictions, the claim may be barred by *Heck*. *See Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87.

It is possible that Plaintiff's excessive force claim may not be barred by *Heck*, depending on the facts surrounding his arrest. "An excessive-force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Torres v. Madrid*, 60 F.4th 596, 600 (10th Cir. 2023) (citing *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015)). "For example, the claim may be that the officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared." *Id*. "[I]n cases where there are multiple uses of force or a continuing use of force, *Heck* may bar the plaintiff's claims as to some force but not all." *Id*. at

6

600–01 (citing *Hooks v. Atoki*, 983 F.3d 1193, 1197, 1201 (10th Cir. 2020) (although *Heck* barred plaintiff, who had pleaded no contest to two counts of assault and battery on a police officer, from bringing excessive-force claims based on four uses of force involved in subduing him, "[t]he fifth and sixth uses of force [we]re different" and thus not barred by *Heck* because plaintiff had alleged that he "no longer posed a threat")).

In *Torres*, the Tenth Circuit reversed the decision finding plaintiff's claims were barred by *Heck* as inconsistent with plaintiff's no-contest pleas to charges of aggravated flight from a law-enforcement officer and assault upon a peace officer "because her pleas are not inconsistent with her claims that the officers used excessive force by firing at her after she had driven past them and no longer posed a threat to them." *Id*. at 599–600. "The analysis of whether *Heck* bars the entirety of a plaintiff's excessive-force claims thus requires 'compar[ing] the plaintiff's allegations to the offense []he committed." *Id*. at 601 (citing *Havens*, 783 F.3d at 782).

The Court cannot determine whether Plaintiff states a valid excessive force claim or whether or not such a claim may be barred by *Heck* based on his state court criminal conviction. The Court finds that the proper processing of Plaintiff's claim cannot be achieved without additional information from appropriate FCSD officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate FCSD officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claim under 28 U.S.C. § 1915A.

### C. Relief Requested

To the extent Plaintiff seeks the reversal of his state convictions, such relief is unavailable in this § 1983 action. A petition for habeas corpus relief is a state prisoner's sole remedy in federal court for a claim of entitlement to immediate or speedier release. *See Preiser v. Rodriguez*, 411

7

U.S. 475, 499 (1973); *Boutwell v. Keating*, 399 F.3d 1203, 1209 (10th Cir. 2005).

**IT IS THEREFORE ORDERED BY THE COURT** that**:**

(1) FCSD officials shall submit the *Martinez* Report on or before **February 18, 2025**. Upon the filing of that Report, the Court will screen Plaintiff's Complaint and issue further orders as necessary. If the Complaint survives screening, the Court will enter a separate order for effecting service on defendants.

(2) FCSD officials are directed to undertake a review of the subject matter of the Complaint:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken to resolve the subject matter of the Complaint; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the FCSD officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The FCSD officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the FCSD officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Ford County Sheriff Bill Carr as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, Sheriff Carr may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, to Sheriff Carr, and to the County Attorney for Ford County, Kansas.

**IT IS SO ORDERED**.

**Dated January 16, 2025, in Kansas City, Kansas.**

                **S/ John W. Lungstrum**
                **JOHN W. LUNGSTRUM**
                **UNITED STATES DISTRICT JUDGE**