**FILED**
**U.S. District Court**
**District of Kansas**
06/15/2026
**Clerk, U.S. District Court**
By: SND **Deputy Clerk**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

GRATTON CURTIS ODELL,

      **Plaintiff,**

      v.                          **CASE NO.  25-3008-JWL**

FORD COUNTY SHERIFF'S
DEPARTMENT, et al.,

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and Kansas prisoner Gratton Curtis Odell filed this pro se civil rights action under 42 U.S.C. § 1983 in January 2025. (Doc. 1.) He was granted leave to proceed in forma pauperis. (Doc. 3.) In June 2025, the Court dismissed this case for failure to state a claim on which relief can be granted, finding that all claims asserted in the complaint are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 27.) Plaintiff appealed to the United States Court of Appeals for the Tenth Circuit and, in May 2026, the Tenth Circuit reversed the dismissal, holding that this Court erred in concluding that *Heck* barred Plaintiff's claims "even under [Plaintiff's] version of events." (Doc. 34, p. 11-12.) The Tenth Circuit therefore remanded this case to this Court for further proceedings. *Id.* at 12.

On May 8, 2026, this Court issued a memorandum and order to show cause ("the MOSC") that explained to Plaintiff that the Ford County Sheriff's Department ("FCSD"), which Plaintiff named as a Defendant in this case, is subject to dismissal because it is not an entity that can be sued under 42 U.S.C. § 1983. (Doc. 36, p. 4.) The MOSC also explained that Plaintiff's request in this case for "[a]n overturn" appeared to ask for an order reversing or vacating his state court criminal conviction or convictions, but that type of relief is not available under § 1983. *Id.* at 4-5.

1

The MOSC granted Plaintiff time to show good cause in writing why the FCSD and the request for an overturn should not be dismissed from this matter. *Id.* at 5.

This matter comes now before the Court on Plaintiff's response to the MOSC. (Doc. 37.) To his credit, Plaintiff agrees that the request for an overturn and the FCSD should be dismissed from this case. *See id.* at 1 ("I think I've erred by asking for an overturn . . . ."), 4 ("I understand under Kansas law police departments lack the capacity to be sued . . . ."). Therefore the Court will dismiss the FCSD from this case and will dismiss the portion of the complaint that asks for an order vacating or overturning Plaintiff's conviction.

Plaintiff's response to the MOSC includes other argument and questions that the Court will also address here. First, in part 1 of his response, Plaintiff points out that in addition to the overturn, he seeks monetary damages in this case. (Doc. 37, p. 1.) Plaintiff is assured that the dismissal of his request for an overturn in no way affects the request he made in his complaint for lost wages and other monetary compensation as relief. (*See* Doc. 1, p. 8.)

Similarly, in part 5 of Plaintiff's response, he explains that in addition to the FCSD, he named individuals as Defendants. (Doc. 37, p. 4-5.) Plaintiff is assured that the dismissal from this case of the FCSD does not mean that the remaining named Defendants are also dismissed. To be clear, Bryan Stammer, Matthew Bolmer, and Stephen M. Ligon will remain as Defendants even though the FCSD will be dismissed from this case.

In part 2 of Plaintiff's response to the MOSC, he addresses the Court's prior conclusion that his claims are barred by *Heck* and he argues the merits of his excessive force claim. (Doc. 37, p. 1-3.) Such arguments are not necessary at this time. As noted above, the Tenth Circuit held that this Court erred in dismissing this case as barred by *Heck* based on the current record. (*See* Doc.

2

34, p. 11-12.) Therefore, this Court is no longer considering *Heck* as a basis for dismissal during this initial screening stage of this case.

Relatedly, in light of the Tenth Circuit's order, this Court is no longer considering dismissal of this case based on the video or other evidence submitted with the *Martinez* Report. Therefore, it will not respond in detail to Plaintiff's arguments in parts 3 and 6 that relate to the *Martinez* Report or related evidence. As a reminder, this case currently is in the initial screening phase, during which the Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. § 1915A(a). During this screening, the Court must dismiss the complaint or any portion of the complaint that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). In deciding whether the complaint or part of the complaint must be dismissed during screening, the Court liberally construes the pro se complaint and takes all well-pleaded allegations in the complaint as true. (*See* Doc. 4, p. 2-4 (explaining screening standards).) The Court does not attempt to finally resolve disputed questions of fact during screening.

At some point later in this case, Plaintiff may need to address or rebut the evidence submitted with the *Martinez* Report. If and when the resolution of disputed facts—such as how many times Plaintiff was tased—becomes necessary in this case, however, Plaintiff will have the opportunity to submit any appropriate evidence. For example, if a Defendant moves for summary judgment, the Court could consider the *Martinez* Report and its exhibits. *See Martin v. Schnurr*, 2026 WL 1194984, *4 (10th Cir. May 1, 2026) (unpublished) ("[U]nless the court uses a *Martinez* Report to determine whether a complaint is frivolous, it may consider the Report only to determine whether to enter summary judgment."). But Local Rule 56.1(d) requires that a party moving for

summary judgment against a pro se litigant must serve and file a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" that states, in part: "If you have proof of your claim, now is the time to submit it." *See* D. Kan. L.R. 56.1(d). Thus, if a Defendant moves for summary judgment and relies upon evidence submitted with the *Martinez* Report, Plaintiff will at that time have the opportunity to submit the relevant pictures or other evidence that contradicts the evidence already in the record. Similarly, if this case proceeds to trial, Plaintiff will be able to admit appropriate evidence for consideration by the fact-finders.

At this point, however, the Court is concerned only with whether Plaintiff's excessive force claim[1] is frivolous or malicious, whether Plaintiff has stated a plausible claim for relief, and whether Plaintiff seeks monetary relief from a defendant who is immune to such relief. *See* 28 U.S.C. § 1915A. In other words, the Court must determine whether Plaintiff's complaint survives the statutorily required screening. The Court concludes that once the FCSD and Plaintiff's requests for unavailable relief are dismissed from the complaint, the complaint will pass screening and a responsive pleading is required from Defendants Stammer, Bolmer, and Ligon. The Court will enter a separate service order directing service on Defendants Stammer, Bolmer, and Ligon.

Finally, at the end of Plaintiff's response to the MOSC, he asks five specific questions of this Court. (Doc. 37, p. 6-7.) Highly summarized, Plaintiff asks the Court: (1) how potential events in state court could affect this federal case; (2) to order counsel for the Kansas Department of Corrections and Ford County Sheriff Bill Carr, both of whom were added to this case by the Court as interested parties, to submit evidence to this Court on Plaintiff's behalf; (3) whether the Court

---

[1] The Court notes that the sole count pled in the complaint alleges excessive force in violation of the United States Constitution. (*See* Doc. 1.) Yet in the response to the MOSC, Plaintiff also asserts that he was denied medical attention after the alleged excessive force. To the extent that Plaintiff wishes to bring a claim of unconstitutional deliberate indifference to a serious medical need, he must amend his complaint to plead such a claim. *See* Fed. R. Civ. P. 15. Asserting it only in his response to the MOSC is not sufficient.

could determine via photographic evidence if marks were made by police-issued tasers or civilian-obtained tasers; (4) whether other avenues for relief are available if this case is dismissed again; and (5) whether a conflict of interest exists for counsel involved in state court proceedings. *Id.*

The Court cannot give Plaintiff legal advice. *See*, *e.g.*, *Kruskal v. Martinez*, 859 F. App'x 336, 338 (10th Cir. 2021) (unpublished) (holding that a federal district court "could not give legal advice" to a pro se litigant who sought information about where to file his appeal); *Betts v. Spies*, 2022 WL 1288421, *1 (D. Kan. April 29, 2022) (unpublished) ("[T]he Court cannot provide Plaintiff with legal advice."). Thus, it cannot offer an opinion on the existence of a conflict of interest in state court or advise Plaintiff on potential avenues for relief. The Court also declines to speculate about the effects of possible future events that might occur in this litigation or Plaintiff's cases in state court.

Moreover, although the Court understands the practical difficulties Plaintiff faces as a pro se prisoner litigant, it will not order attorneys who do not represent Plaintiff[2] to take actions on his behalf. If Plaintiff wishes to request appointment of counsel in this case, he must file a motion for appointment of counsel. Plaintiff is cautioned, however, that there is no constitutional right to appointment of counsel in a civil case. *See Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in

---

[2] In his response to the MOSC, Plaintiff asserts that counsel for the Kansas Department of Corrections ("KDOC") "is an interested party on my behalf because she is our prison attorney and the one who showed [Plaintiff] the videos from the *Martinez* Report." (Doc. 37, p. 6-7.) Plaintiff misunderstands the role of this attorney. The KDOC was added to this case as an interested party because Plaintiff experienced difficulty viewing video footage submitted as exhibits to the *Martinez* Report. (Doc. 19, p. 2.) Plaintiff was, at that time, incarcerated at a KDOC facility, so the Court added the KDOC as an interested party "for the limited purpose of providing information regarding an opportunity for Plaintiff to view the recordings contained on the flash drive served to him by Sheriff Carr in this matter." *Id.* KDOC counsel took action to ensure that Plaintiff was able to view the recordings at the KDOC facility in compliance with applicable KDOC rules and procedures. (*See* Doc. 21.) Shortly thereafter, the KDOC's status as an interested party in this case was terminated. (Doc. 22.) At no time did counsel for the KDOC act as counsel for Plaintiff in this case; she was simply complying with the Court's request for assistance with the steps necessary to ensure that Plaintiff had the opportunity to view the video footage submitted with the *Martinez* Report.

forma pauperis" in a civil case. *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)). The Court cannot guarantee that an attorney will volunteer to represent Plaintiff at no cost to Plaintiff. *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

In addition, the decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). In deciding whether to request volunteer counsel for a plaintiff, the Court considers "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995); *Hill*, 393 F.3d at 1115.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Ford County Sheriff's Department is dismissed from this matter, as is Plaintiff's request for relief in the form of an order reversing his state conviction. A separate service order will be entered regarding Defendants Stammer, Bolmer, and Ligon.

**IT IS SO ORDERED**.

**Dated June 15, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

6